IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,875

In the Matter of KEVIN P. SHEPHERD,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed September 27, 2019. Two-year suspension.

*Penny R. Moylan*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, and Deborah L. Hughes, Deputy Disciplinary Administrator, were with her on the formal complaints for the petitioner.

*John J. Ambrosio*, of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka, argued the cause, and *Kevin P. Shepherd,* respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Kevin P. Shepherd, of Topeka, an attorney admitted to the practice of law in Kansas in 2000.

On September 7, 2017, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). Upon motion to file an answer out of time, which was granted, the respondent filed an answer to the complaint on November 8, 2017. Written Stipulations were filed by the parties on March 27, 2018. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on April 3, 2018, where the respondent was personally present and was represented by counsel. On April 4, 2018, an order was filed directing the trust account auditor for the office of the Disciplinary Administrator to report by June 1, 2018, regarding the complete audits of respondent's

trust account and operating account. The office of the Disciplinary Administrator filed an unopposed motion for additional time to file its report; the motion was granted by order filed May 31, 2018. An amended formal complaint was filed on August 13, 2018, and respondent's answer was filed on August 20, 2018. Further written Stipulations were filed on November 15, 2018. The continued hearing was held on November 20, 2018, again where the respondent was personally present and was represented by counsel. The hearing panel determined the respondent violated KRPC 1.1 (2019 Kan. S. Ct. R. 295) (competence); 1.3 (2019 Kan. S. Ct. R. 298) (diligence); 1.4(a) (2019 Kan. S. Ct. R. 299) (communication); 1.15(a) (2019 Kan. S. Ct. R. 334) (safekeeping property); 1.15(d)(1) (preserving client funds); 1.16(a)(1) (2019 Kan. S. Ct. R. 339) (withdrawing from representation); 8.1(a) (2019 Kan. S. Ct. R. 384) (false statement in connection with disciplinary matter); 8.4(c) (2019 Kan. S. Ct. R. 387) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

". . . .

"DA12671—Representation of N.W.

"18.     After N.W.'s arrest for driving under the influence of alcohol (second offense), he retained the respondent to represent him. On December 17, 2013, the respondent entered his appearance on behalf of N.W.

"19.     On February 9, 2015, a jury found N.W. guilty as charged. On March 16, 2015, the court sentenced N.W. to six months in jail with work release. The respondent

2

filed a timely notice of appeal. N.W. posted a $25,000 surety appeal bond. N.W.'s bond included the following provision:

'It shall be a condition of this recognizance that the defendant shall cause his/her appeal to be diligently prosecuted. Failure to diligently prosecute his/her appeal shall result in the revocation of this bond.'

"20.	The appellate court rules require appeals to be docketed within 21 days of the filing of the notice of appeal. The respondent did not timely docket the appeal.

"21.	On May 16, 2016, over one year later, the respondent filed a motion to docket the appeal, out-of-time. The Kansas Court of Appeals granted the respondent's motion and allowed the respondent to docket N.W.'s appeal out-of-time.

"22.	According to the briefing schedule, N.W.'s brief was due on July 13, 2016. The respondent failed to timely file a brief on behalf of N.W.

"23.	On August 11, 2016, the court issued an order to the respondent directing him to file a brief by August 31, 2016. The respondent failed to file a brief on behalf of N.W. by August 31, 2016, as ordered by the court.

"24.	On September 21, 2016, the court dismissed N.W.'s appeal for lack of prosecution.

"25.	On November 7, 2016, Jennifer Bates, chief deputy clerk of the appellate courts sent an email message to the disciplinary administrator, [advising] that the respondent failed to file a brief on behalf of N.W. and, as a result, N.W.'s appeal was dismissed. The disciplinary administrator docketed Ms. Bates' email message as a complaint.

"26.	On November 10, 2016, the disciplinary administrator forward[ed] a copy of Ms. Bates' complaint to the respondent and directed him to provide a written response to the complaint within 20 days. The respondent failed to timely provide a written response to the complaint filed by Ms. Bates.

"27.     The disciplinary administrator forwarded the complaint to the Topeka Ethics and Grievance Committee for investigation. Ron Wurtz was assigned to investigate the complaint against Mr. Shepherd. On December 6, 2016, Mr. Wurtz sent a letter to the respondent, directing him to provide a written response to the complaint by January 6, 2017.

"28.     On December 23, 2016, the respondent entered treatment at Cottonwood Springs Treatment Center. On December 31, 2016, the respondent was discharged with a diagnosis of bipolar disorder and alcohol use disorder.

"29.     The respondent did not receive Mr. Wurtz' December 6, 2016, letter. Later, Mr. Wurtz resent the letter and extended the respondent's deadline to file a written response to the complaint to January 9, 2017. On January 9, 2017, the respondent provided Mr. Wurtz with a written response to the complaint. In his response, the respondent took responsibility for his misconduct. The respondent assured Mr. Wurtz that he would work to get the appeal reinstated. In his response, the respondent stated that he suffered a recurrence of depression that had paralyzed him in the practice of law in the weeks before he admitted himself to treatment. The respondent indicated that there were other clients who may have also been impacted by his depression-related neglect during that time. The respondent took no action to get N.W.'s appeal reinstated.

"30.     On January 11, 2017, Mr. Wurtz interviewed the respondent. The respondent told Mr. Wurtz that he was planning to file a motion to reinstate the appeal for N.W. The respondent also told Mr. Wurtz that he had been in touch with N.W. and N.W. wanted the respondent to continue to represent him.

"31.     On February 1, 2017, Mr. Wurtz requested an update from the respondent. In response, on February 3, 2017, the respondent sent Mr. Wurtz an email message and attached his discharge form from the Cottonwood Springs Treatment Center. In the message, the respondent stated:

        '. . . .

4

'I discussed matters with [N.W.] [N.W.] requested to get this matter over with and not proceed with the appeal. [N.W.] did not actually pay any money for my services to appeal; he was having financial difficulties; I agreed to arrange for payment once the appeal was over. [N.W.] decided he'd rather just accept his sentence and not have me move to reinstate the appeal. He is scheduled to appear for sentencing in Johnson County on February 28, 2017 at 1:30. I continue to represent [N.W.]'

"32.    On February 4, 2017, Mr. Wurtz replied:

'I think it would be relevant and helpful to insure clarity of the report and investigation to have some independent assurance that your client is satisfied with the resolution of the appeal issue. Would it be possible for me to talk to him?'

"33.    Later that same day, the respondent called Mr. Wurtz and admitted that he had not been honest with Mr. Wurtz about his client's decision to forego the appeal. The respondent told Mr. Wurtz that N.W. assumed the appeal had been denied and the respondent did not correct him. Mr. Wurtz agreed to delay completing the report to allow the respondent to make things right with his client. The respondent agreed to contact his client and explain what happened.

"34.    On February 28, 2017, the day N.W.'s case was scheduled in Johnson County District Court, Mr. Wurtz asked the respondent for an update. The respondent replied, 'I have not spoke to my client yet. I'm struggling with how to present it to him.'

"35.    That day, the respondent explained what happened to N.W., obtained a continuance of the hearing, and agreed to assist N.W. with finding new counsel. The respondent offered to pay for the fees and costs associated with reinstating the appeal.

"36.    Thereafter, Nicholas David entered an appearance on behalf of N.W. Mr. David was able to get the appeal reinstated. The order provided:

5

'The mandate in this case has been withdrawn. Because of that, Appellant's amended motion for reinstatement of appeal is granted. It is clear that prior counsel was ineffective for failing to file an appellate brief. Ideas of procedural fairness and due process require that Appellant be allowed to have his appeal decided on the merits.'

The respondent paid the attorney fees and other costs associated with reinstating the appeal.

"DA13015—Insufficient Funds Checks

"37.     During the period of time from October 30, 2017, through November 16, 2017, the respondent submitted five checks to the Shawnee County District Attorney's Office for diversion fees relating to five separate clients. The checks were drawn on the respondent's operating account held at Vision Bank, Topeka, Kansas. Check numbers 6507, 6512, 6516, 6525, and 6527 were returned to the respondent because there were insufficient funds in the account to cover the checks.

"38.     On December 11, 2017, the Shawnee County District Attorney's office notified respondent, *via* certified return receipt mail, that the respondent had seven days to submit valid payment on the diversion cases or his clients' diversions could be revoked. The respondent failed to submit valid payments on the diversion cases.

"39.     On January 3, 2018, Charles Kitt from the Shawnee County District Attorney's Office, spoke to respondent regarding the returned checks. The respondent acknowledged receiving the December 11, 2017, letter and told Mr. Kitt that the returned checks were the result of the respondent recently changing accounts. The respondent stated he would provide full restitution of the returned checks that same day. The respondent did not provide full restitution that day. Additionally, despite his statement to Mr. Kitt that he had recently changed accounts, his operating account and trust account had not changed for a period of five years.

"40.     On January 10, 2018, the respondent provided a cashier's check, in the amount of $1,165.00, for the clients' diversion fees and $150.00 in returned check fees.

"41.     As a result of the insufficient funds checks, the disciplinary administrator's auditor conducted an audit of the respondent's accounts. The auditor reviewed the respondent's accounts for the period of time beginning January 1, 2017, and continuing through February 28, 2018.

"42.     During the audit, the auditor discovered that:

a.     the bank assessed the respondent's trust account overdraft fees on four occasions between June 2017, and December 2017;

b.     the account had a negative balance on six occasions;

c.     funds were transferred from the respondent's operating account to the trust account, on five occasions;

d.     multiple checks from the trust account were written to cash, without any corresponding client reference;

e.     trust account funds were used for the payment of operating expenditures, including credit card bills, payroll, telephone bills, and insurance;

f.     trust account funds were used for payment of personal expenditures, including rent and personal loans; and

g.     fees from clients were deposited directly into the respondent's operating account.

"43.     In addition to depositing fees from clients into his operating account, on occasion, the respondent also deposited fees from clients into his personal account. For example, on January 11, 2017, $1,600 received from a client was deposited into the respondent's personal account.

7

"44.     Finally, when the respondent received cash from clients he often did not deposit the cash into any account. According to the audit, it appears that during the 14 months examined, the respondent received approximately $50,000 of unearned fees in cash and did not deposit the cash into any account. During the hearing on the formal complaint, the respondent readily admitted that he has not been properly handling the attorney fees paid to him by his clients. The respondent testified that his accounts are still not 'up to snuff yet.' Specifically, the respondent testified:

'Q.     [By Ms. Moylan] Do you agree it's important for you to get someone in that can handle client monies and accounting?

'A.     [By the respondent] Yes.

'Q.     Is that something that you'd be willing to work toward?

'A.     I'm working towards it now, it just hasn't actually been realized. 'Um, everything—every month is getting better. Every month there's—I mean, I look at the spreadsheets every month, I say, this is getting better, this is getting better. Still far away, but it's getting better.'

"*Conclusions of Law*

"45.     Based upon the respondent's stipulations and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.15 (safekeeping property), KRPC 1.16 (termination of representation), KRPC 8.1 (disciplinary investigations), and KRPC 8.4 (professional misconduct), as detailed below.

"KRPC 1.1

"46.     Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent admitted that by

failing to timely docket the appeal and file a brief on behalf of N.W., he did not employ the requisite thoroughness and preparation reasonably necessary for the representation. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

## "KRPC 1.3

"47.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent N.W. by failing to timely docket N.W.'s appeal and by failing to file a brief for N.W. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated KRPC 1.3.

## "KRPC 1.4

"48.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' By failing to explain that the [respondent] failed to file a brief and that the appeal was dismissed, the respondent failed to keep N.W. reasonably informed about the status of the matter. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

## "KRPC 1.15

"49.     Lawyers must properly safeguard the property of their clients and third persons.

'(a)     A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be

9

preserved for a period of five years after termination of the representation.'

KRPC 1.15(a). Thus, properly safeguarding the property of others necessarily requires lawyers to deposit unearned fees into an attorney trust account. The respondent systematically failed to utilize his attorney trust account. The respondent failed to deposit approximately $50,000 of fees received in cash into his attorney trust account. Additionally, the respondent deposited unearned fees into his operating account and his personal account. The hearing panel concludes that the respondent violated KRPC 1.15(a) by failing to deposit unearned fees, thus, the property of others, into his attorney trust account.

"50.    The respondent also violated KRPC 1.15(d)(1). KRPC 1.15(d)(1) provides:

'(d)    Preserving identity of funds and property of a client.

(1)    All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable accounts maintained in the State of Kansas with a federal or state chartered or licensed financial institution and insured by an agency of the federal or state government, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(i)    Funds reasonably sufficient to pay bank charges may be deposited therein.

(ii)    Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.'

10

The respondent paid personal and office bills directly out of his attorney trust account. If the funds in his trust account were earned, then the funds should have been previously transferred to his operating account. Further, the respondent transferred monies from his operating account to his attorney trust account. Proper use of an attorney trust account should not result in the transfer of fees from an operating account to an attorney trust account. Finally, the respondent deposited unearned fees into his operating account, thereby commingling his clients' funds with unearned fees. As such, the hearing panel concludes that the respondent violated KRPC 1.15(d)(1).

"KRPC 1.16(a)(1)

"51.    In certain circumstances, attorneys must withdraw from representing a client. KRPC 1.16 provides:

'(a)    Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1)    the representation will result in violation of the rules of professional conduct or other law;'

Once the appeal was dismissed as a result of the respondent's misconduct, the respondent was required to withdraw from the representation because of the conflict of interest which developed between the respondent and N.W. The hearing panel concludes that the respondent violated KRPC 1.16(a)(1).

"KRPC 8.1(a)

"52.    KRPC 8.1(a) provides, '[a]n applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not . . . knowingly make a false statement of material fact.' The respondent provided false information to Mr. Wurtz during the disciplinary investigation

11

by falsely stating that N.W. did not want to proceed with the appeal. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.1(a).

"KRPC 8.4

"53.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty by omission when he failed to inform his client that his appeal was dismissed. Additionally, the respondent engaged in conduct that involved dishonesty when he falsely told Mr. Wurtz that N.W. did not want to proceed with the appeal and when he misinformed Charles Kitt that he had recently changed bank accounts when he had not. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"54.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to timely docket N.W.'s appeal and when he failed to file a brief on behalf of N.W. The respondent's misconduct resulted in unnecessary consideration by the court, the dismissal of the appeal, and delay with the appellate process. The hearing panel concludes that the respondent violated KRPC 8.4(d).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"55.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"56.    *Duty Violated*. The respondent violated his duty to his client to provide competent and diligent representation. Additionally, the respondent violated his duty to

12

his client to provide adequate communication. The respondent also violated his duty to the legal profession to cooperate in disciplinary investigations. Finally, the respondent violated his duty to the public to maintain his personal integrity.

"57.    *Mental State*. The respondent knowingly violated his duties.

"58.    *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to his client and to the administration of justice. The fact that the respondent's client's appeal was later reinstated in part through the respondent's efforts, which the hearing panel considers a mitigating circumstances, does not change the fact that the appeal was originally dismissed for lack of briefing.

"59.    *Aggravating and Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a.    Prior Disciplinary Offenses. The respondent has been previously disciplined on two occasions.

1)    In 2008, the disciplinary administrator informally admonished the respondent for violating KRPC 1.1 (competence) and 1.3 (diligence) for failing to timely file briefs in criminal appellate cases.

2)    On November 29, 2009, the Kansas Supreme Court suspended the respondent's license to practice law for three years for violating KRPC 1.15 (safekeeping property), KRPC 3.3 (candor to the tribunal), and KRPC 8.4(c) (engaging in professional misconduct involving dishonesty). The Court allowed the respondent to apply for reinstatement after serving one year of suspension. On May 2, 2011, the Court reinstated the respondent's license to practice law, subject to a two year plan of probation. *In re Shepherd*, 292 Kan. 189 (2011). On January 4, 2013, the Court discharged the respondent from probation. *In re Shepherd*, 296 Kan. 270 (2013).

13

b.     <u>Dishonest or Selfish Motive</u>. The respondent failed to inform his client of the dismissal of his appeal to conceal his misconduct. Additionally, the respondent provided false information to Mr. Wurtz and Mr. Kitt to further conceal his misconduct. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty.

c.     <u>A Pattern of Misconduct</u>. The respondent has engaged in a pattern of misconduct. The respondent's misconduct in this case is of the same character as the misconduct in the disciplinary cases from 2008 and 2009.

d.     <u>Multiple Offenses</u>. The respondent committed multiple rule violations. The respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.15 (safekeeping property), KRPC 1.16 (termination of representation), KRPC 8.1 (disciplinary investigations), and KRPC 8.4 (professional misconduct). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

e.     <u>Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process</u>. The respondent failed to provide a timely written response to the complaint in this case. Additionally, the respondent provided false information to Mr. Wurtz, the disciplinary investigator. The hearing panel concludes that the respondent obstructed the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary process. The hearing panel does not find this obstruction necessarily to be out of bad faith, however, but rather finds that the respondent's misconduct took place at a time when he was going through a period of personal and emotional distress, as the hearing panel notes below.

f.     <u>Substantial Experience in the Practice of Law</u>. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 2000. At the time of the misconduct, the respondent had been practicing law for 16 years.

"60.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.      Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct. The respondent suffers from bipolar disorder and substance abuse disorders and is working through psychological distress associated with an abusive childhood. It is clear that the respondent's mental health struggles contributed to his misconduct.

b.      Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct. After he admitted to Mr. Wurtz that he had not informed his client of the dismissal of the appeal, the respondent did in fact inform his client that the appeal had been dismissed and voluntarily paid the attorney fees associated with reinstating his appeal which constitutes restitution in this case.

c.      The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions. The respondent admitted the facts and rule violations set forth in the formal complaint and the amended formal complaint.

d.      Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney. The respondent is an active and productive member of the bar of Topeka, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by letters received by the hearing panel. The hearing panel notes that Judge Anderson testified as to the respondent's reputation as a criminal defense lawyer, [noting] that the respondent is one of the few criminal defense attorneys in Shawnee County appointed to represent indigent defendants in high-level felony cases.

15

e.      Remorse. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

f.      Remoteness of Prior Offenses. The discipline imposed in 2008 and 2009 is remote in time but not in character to the misconduct in this case.

"61.      In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42      Suspension is generally appropriate when:

(a)      a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)      a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'5.11      Disbarment is generally appropriate when:

. . . .

(b)      a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that serious[ly] adversely reflects on the lawyer's fitness to practice.

'7.2      Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

'8.1    Disbarment is generally appropriate when a lawyer:

. . . .

(b)    has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

"*Recommendation of the Parties*

"62.    The disciplinary administrator recommended that the respondent's license to practice law be suspended for an indefinite period of time. Counsel for the respondent recommended that the respondent be censured and that he be placed on probation, subject to the terms and conditions of his proposed plan of probation.

"*Consideration of Request for Probation*

"63.    When a respondent makes a request to be placed on probation, the hearing panel is obligated to consider Rule 211(g) to determine whether consideration of probation is appropriate.

'(3)    The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i)    the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

17

        (ii)      the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

        (iii)     the misconduct can be corrected by probation; and

        (iv)     placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"64.     The hearing panel concludes that the respondent developed a workable, substantial, and detailed plan of probation. The respondent provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel months before the hearing on the formal complaint.

"65.     The respondent put portions of the proposed plan of probation into effect prior to the hearing by complying with some of the terms and conditions of the probation plan. The respondent, however, did not put each of the terms and conditions of the probation plan into effect.

"[66].     The respondent's dishonest conduct cannot be corrected by probation. *See In re Stockwell*, 296 Kan. 860, 868, 295 P.3d 572 (2013) ('Moreover, this court is generally reluctant to grant probation where the misconduct involves fraud or dishonesty because supervision, even the most diligent, often cannot effectively guard against dishonest acts.').

"[67].     Finally, placing the respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas. Previously, the respondent served a one-year suspension followed by two years of supervised probation. Many of the issues present in this case were also present in the respondent's earlier case. The benefits of probation should have already been realized by the respondent.

18

"[68].    The hearing panel carefully considered the requirements of Rule 211(g), the facts presented in this case, and, despite the significant evidence in mitigation, concludes that probation is not appropriate in this case.

"*Recommendation of the Hearing Panel*

"[69].    The hearing panel wishes to acknowledge the big strides the respondent has made to date. The hearing panel applauds the respondent on his efforts to combat his substance abuse and to come to accept a life shaped by what the hearing panel can only describe as difficult and traumatic childhood experiences. However, the respondent has some distance yet to go, as he acknowledged in his testimony. It is the charge of the hearing panel to recommend how best to address the respondent's past conduct in a way that not only accounts for the strides the respondent has made but also protects the public in light of the respondent's current position.

"[70].    Based upon the respondent's stipulations, the findings of fact, the conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license to practice law be suspended for a period of two years and that the respondent be required to undergo a reinstatement hearing, under Rule 219, prior to consideration of reinstatement. The hearing panel also recommends that the respondent be allowed to apply for reinstatement after one year. Finally, the hearing panel recommends that upon reinstatement the respondent, again, be placed on probation to ensure that the respondent properly utilizes an attorney trust account.

"[71].    During the time when the respondent's license is suspended, the hearing panel recommends that the respondent:

a.    remain clean and sober from all intoxicating substances;

b.    cease gambling;

c.    seek and obtain a psychological evaluation from a licensed clinical psychologist approved by the disciplinary administrator (to include an evaluation

19

of whether the respondent has an addiction to gambling) and comply with all recommendations of the evaluator;

d.    develop effective written office policies and procedures, including how he will calendar all appointments, court appearances, and deadlines, to be approved by the disciplinary administrator;

e.    develop an effective daily ledger system for all fees received, including how cash will be recorded and tracked, to be approved by the disciplinary administrator; and

f.    draft a form engagement letter, to be approved by the disciplinary administrator's office.

"[72].    Finally, the hearing panel recommends to the respondent that his proposed plan of probation presented to the reinstatement hearing panel address the items listed above as well as to include a provision that, upon reinstatement, the respondent will immediately hire an accountant to oversee the respondent's handling of all financial matters.

"[73].    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2019 Kan. S. Ct. R. 257). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth

20

of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint and the amended formal complaint to which he filed an answer. The respondent was also given adequate notice of the hearings before the panel and the hearing before this court. He did not file exceptions to the hearing panel's final hearing report.

With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2019 Kan. S. Ct. R. 261). Furthermore, the facts before the hearing panel establish by clear and convincing evidence the charged misconduct in violation of KRPC 1.1 (2019 Kan. S. Ct. R. 295) (competence); 1.3 (2019 Kan. S. Ct. R. 298) (diligence); 1.4(a) (2019 Kan. S. Ct. R. 299) (communication); 1.15(a) (2019 Kan. S. Ct. R. 334) (safekeeping property); 1.15(d)(1) (preserving client funds); 1.16(a)(1) (2019 Kan. S. Ct. R. 339) (withdrawing from representation); 8.1(a) (2019 Kan. S. Ct. R. 384) (false statement in connection with disciplinary matter); 8.4(c) (2019 Kan. S. Ct. R. 387) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 8.4(d) (engaging in conduct prejudicial to the administration of justice). The evidence also supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for the respondent's violations. At the hearing before the panel, the Disciplinary Administrator's office recommended the respondent be indefinitely suspended from the practice of law. The respondent asked the panel to recommend censure and probation under the probation plan he had proposed. The hearing panel recommended that the respondent be suspended for a period of two years, that he undergo a reinstatement hearing pursuant to Kansas Supreme Court Rule 219 (2019 Kan. S. Ct. R. 270), that he be allowed to apply for reinstatement after one year, and that he be placed on probation after reinstatement. The

21

panel further recommended items for consideration by the respondent and the reinstatement hearing panel. Finally, the hearing panel recommended that, upon reinstatement, respondent immediately hire an accountant to oversee his handling of all financial matters.

At the hearing before this court, the Disciplinary Administrator's office recommended the respondent be indefinitely suspended but that the suspension be stayed and respondent be placed on probation for a period of five years. The recommendation included suggested terms of probation.

The Disciplinary Administrator's office explained it based its recommendation for indefinite suspension on two of the circumstances found by the hearing panel. First, the respondent had previously been suspended from the practice of law for ethical violations similar to those now at issue. Second, respondent's violations included instances of dishonesty.

The Disciplinary Administrator's office also explained the reasons it is now recommending that this court stay the suspension and place respondent on probation for five years. Those reasons included: respondent's compliance and success while implementing his proposed plan of probation; his success in maintaining sobriety during the 10 months after the panel hearing; his continued participation in counseling with a therapist, programs of the Kansas Lawyers Assistance Program (KALAP), and AA meetings; his efforts to resolve his accounting issues, including hiring an accountant and allowing additional audits by the Disciplinary Administrator's office; his work with his attorney supervisor and members of the Disciplinary Administrator's office to correct law office management issues; and, most significantly, for the first time his addressing through therapy the psychological distress associated with his abusive childhood. The Disciplinary Administrator's office also noted that several district court judges gave the respondent high marks for the quality of his legal work and representation of his clients.

This court is not bound by the recommendations made by the Disciplinary Administrator's office or the hearing panel. Supreme Court Rule 212(f) (2019 Kan. S. Ct. R. 261). But we agree with and adopt the panel's recommendation. In doing so, we decline to stay the suspension of respondent from the practice of law.

While we recognize the significant steps respondent has taken and recognize those steps as mitigating circumstances, we cannot overlook the seriousness of respondent's violations and his history of misconduct. The panel recognized the mitigation evidence and recommended a two-year period of suspension. This recommendation was for a shorter time than imposed for similar conduct in 2009. The recommendation thus takes into account the efforts respondent had made before the panel's hearing, and we recognize respondent's continued efforts since the hearing panel issued its report. Despite these efforts, we decline to reduce the sanction recommended by the panel. The respondent committed acts of dishonesty, including dishonesty in the disciplinary process and in statements to opposing counsel.

Based on the seriousness of these violations, a majority of the court concludes the sanction of a two-year suspension without a stay is appropriate. But given the mitigating evidence, a majority of the court accepts the hearing panel's recommendation that respondent be allowed to seek reinstatement after one year of suspension. One member of the court would impose a more severe sanction and two other members would adopt the recommendation made by the office of the Disciplinary Administrator at the hearing before the court.

At the reinstatement hearing, the respondent will be required to present clear and convincing evidence that there are no current impediments to his ability to practice law. Further, respondent shall provide to the reinstatement hearing panel a plan of probation under which his law practice after reinstatement will be supervised, for a period of time to be set by the panel, by an attorney acceptable to the Disciplinary Administrator and

which will contain such other provisions as the Disciplinary Administrator shall deem appropriate.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Kevin P. Shepherd be and he is hereby disciplined by a two-year suspension from the practice of law in the state of Kansas in accordance with Supreme Court Rule 203(a)(2) (2019 Kan. S. Ct. R. 240), effective on the date of the filing of this opinion; that he be allowed to apply for reinstatement after one year of suspension; that he undergo a reinstatement hearing pursuant to Rule 219; and, if reinstated, that he be placed on probation governed by the terms and conditions set forth in the final hearing report. See Supreme Court Rule 211(g) (2019 Kan. S. Ct. R. 257).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2019 Kan. S. Ct. R. 268).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

ROSEN, J., not participating.
PATRICK D. MCANANY, Senior Judge, assigned.[1]
ERIC W. GODDERZ, District Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:**  Senior Judge McAnany was appointed to hear case No. 120,875 vice Justice Rosen under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2]**REPORTER'S NOTE:**  Under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution, District Judge Godderz was appointed to hear case No. 120,875 to fill the vacancy on the court by the retirement of Justice Johnson.